MALONEY v. UNION FERRY CO. OF NEW YORK & BROOKLYN et al.

(Supreme Court, Appellate Division, Second Department. December 12, 1899.)

NEGLIGENCE—FERRIES—EVIDENCE.

As plaintiff was driving a load of shingles through the gate of a ferry house, the load came in contact with the jamb of the gate, and in backing the load out plaintiff was injured. Plaintiff and one witness testified the jam was caused by the gate keeper seizing his horses, and turning them to one side; but four witnesses, two disinterested, testified it was caused by plaintiff's load projecting. It was not shown that the turning of the horses caused the load to shift, or how it caused the load to come in contact with the gate. *Held*, that the weight of the evidence was against a judgment for plaintiff.

Appeal from trial term, Kings county.

Action by Hugh Maloney against the Union Ferry Company of New York & Brooklyn, impleaded, etc. From a judgment for plaintiff, defendant ferry company appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and WOODWARD, JJ.

Frederic A. Ward, for appellant.

Charles F. Brandt, for respondent.

PER CURIAM. The action is to recover damages for negligence. There is a variance in the claims of the respective parties as to the force which operated to produce the injury. The plaintiff and his helper testified that the plaintiff approached the entrance to the ferry house with a truck loaded with shingles, to which was attached a span of horses; that the plaintiff was seated upon the load and was driving; that he had partially passed through the gateway, when the gate keeper seized his horses by the head, and, turning them, brought a part of his load in contact with the jamb of the gate, which prevented his further progress. The plaintiff's helper testified that at this time he handed to the gate keeper 32 cents in money for the ferriage, and that the gate keeper demanded 5 cents more, which the plaintiff was about to produce, when the seizure of the horses took place, and the gate keeper refused to allow the truck to further proceed until the load had been readjusted, so as to make it safe for carriage, and the gate keeper thereupon returned to the helper the 32 cents. This testimony was denied by the defendant, which produced two disinterested witnesses and two of its employés, including the gate keeper, who testified that the load projected on one side to such an extent that in attempting to pass the gate it came in contact with the jamb. That the truck became stuck in the gateway is undisputed, and while it so remained the plaintiff sustained no injury. His horses, however, were unable to back up the load or extricate it from the position it then occupied, and plaintiff thereupon stated to the gate keeper that he would have to help him out of such position. A rope was obtained, and attached to the rear end of the truck, and an attempt was made to draw it out by hand, with the assistance of the horses. This failed, and, a beer wagon having arrived upon an incoming boat, request was made of its driver to assist to draw the truck back. He complied, and the rope was attached to the rear end of his wagon, at what place is a matter of dispute, and the truck was

drawn back. As it cleared the jamb it tipped over, and the plaintiff claims to have received injury to himself, his truck, and his horses, and, on account of the damage sustained thereby, this judgment has been rendered.

The court, in submitting the case to the jury, limited the question of the defendant's negligence to its act in causing the plaintiff's load to come in contact with the jamb of the gate, it being claimed that if the gate keeper had not interfered with the horses the load would have passed through without difficulty. All claim for damage or injury sustained by reason of the hauling out of the load by the driver of the brewery wagon was by the court excluded from the consideration of the jury, presumably upon the theory that plaintiff requested and assented to those acts, and was therefore precluded from making any claim for injury based thereon. The court, however, held that the jury might find that the proximate cause of the injury was the act of the defendant in causing the load to come in contact with the jamb of the gate.

Upon all of the proof it is undisputed that the plaintiff's load in some measure projected. The only dispute was as to its extent, the plaintiff claiming that only a few shingles projected, while the concurring testimony of all the witnesses produced by the defendant tended clearly to establish that the projection was of such a character as caused it to come in contact with the jamb of the gate when it was driven through. Upon this subject we think the preponderance of the testimony was with the defendant. It is difficult to see, and the evidence throws no light thereon, how the action of the gate keeper in seizing the horses by the head, assuming that he did so, caused the load upon the truck to come in contact with the jamb of the gate. It is conceded, indeed the plaintiff insisted, that his horses and the forward part of his truck had passed through the gateway, and that the contact with the shingles was at the rear part. It is not made to appear by the testimony of any witness that the act of turning the truck caused the load to shift, and it is difficult to see how it could. If the load did not shift,—and nobody testifies that it did,—then the turning of the horses to the position formerly occupied by them ought to have brought the truck and load to the same position that they originally held; yet it is clear that the cause of the stoppage was the contact of the shingles with the jamb of the gate. The testimony of the disinterested witnesses called by the defendant is to the effect that the load, as it entered upon its passage through the gateway, projected so far as to bring it in contact with the jamb of the gate. The mere statement by the plaintiff and his helper that the act of turning the horses produced this result, in the absence of any explanation showing how such act could produce it, is insufficient to overcome the testimony given upon the part of the defendant. The judgment should therefore be reversed, as against the weight of the testimony, upon payment by the defendant of the trial fee and the disbursements of the trial.

Judgment and order reversed, and new trial granted, costs to abide the event, upon appellant, within 20 days, paying the trial fee and disbursements of the trial. Upon failure to comply with such condition, judgment and order affirmed, with costs.